**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

RICHARD MCGRAIL,

                                        Petitioner,

              - v -                                            Civ. No. 9:08-CV-111
                                                                      (GLS/RFT)
SUPERINTENDENT, *Collins Corr. Facility*,

                                        Respondent.

**APPEARANCES:**                                    **OF COUNSEL:**

RICHARD MCGRAIL
Petitioner, *Pro Se*
06-B-0191
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, NY 14411

HON. ERIC T. SCHNEIDERMAN                    THOMAS B. LITSKY, ESQ.
New York State Attorney General               Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, NY 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

<u>**REPORT-RECOMMENDATION and ORDER**</u>

        Petitioner Richard McGrail, acting *pro se*, commenced this action seeking *habeas corpus*

relief pursuant to 28 U.S.C. § 2254, alleging that his present confinement in state custody is in

violation of his federal constitutional rights.  McGrail asserts the following grounds in support of

his Petition: (1) his guilty plea was involuntary; (2) he received ineffective assistance of trial

counsel; and (3) his confession was obtained in violation of his rights under the Fourth Amendment,

his rights against self-incrimination, and was the product of coercion.  Dkt. No. 1, Pet.  For the

reasons set forth below, this Court recommends that McGrail's Petition be **denied**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 8, 2005, J.M.,[1] Petitioner's eight-year-old niece, told a police investigator that, on July 2, 2005, Petitioner asked her if she "wanted to learn something," pulled down her pants, and licked her vagina. *See* State Court R. [hereinafter "R."], Ex. B, Dep. of Detective Frederick E. Cornelius, dated July 14, 2005. Petitioner was thereafter arrested and signed a statement acknowledging his oral contact with J.M.'s vagina. *See* R., Ex. B, Pet'r Statement to Police, dated July 8, 2005. On September 6, 2005, a Cayuga County Grand Jury indicted Petitioner, charging him with Criminal Sexual Act in the First Degree (N.Y. PENAL LAW § 130.50(3)), Sexual Abuse in the First Degree (N.Y. PENAL LAW § 130.65(3)), Endangering the Welfare of a Child (N.Y. PENAL LAW § 260.10), and Making a Punishable False Written Statement (N.Y. PENAL LAW § 210.45). R., Ex. B, Indictment.

On November 10, 2005, Petitioner and his attorney, Samuel M. Tamburo, Esq., appeared before the trial court and stated that Petitioner wanted to plead guilty to the charge of Criminal Sexual Act in the First Degree, in full satisfaction of the Indictment. R., Ex. M, Plea Hr'g Tr., dated Nov. 10, 2005, at pp. 5-14. During the court's colloquy, Petitioner indicated that his plea was voluntary, he was satisfied by his defense attorney's services, and he understood the nature and consequences of his plea, including that he was waiving a multitude of rights. *Id.* However, Petitioner told the court that he had been "drinking [on July 2, 2005] and [does not] remember anything that happened that day." *Id.* at p. 10. Nonetheless, Petitioner indicated that he would plead

---

[1] Because Petitioner was convicted of a sex offense and included the name of his minor victim in his Petition, this Court directed the Clerk of the Court to seal the Petition so as to maintain the confidentiality of the victim. *See* Dkt. No. 5, Order, dated Mar. 28, 2008. To further preserve confidentiality, we now only refer to the victim by her initials.

guilty because, even though he had no recollection of the event, he was "convinced that the proof is sufficient to convict [him] and . . . [he does] not dispute [the] allegations[.]" *Id.* at pp. 13-14. Accordingly, the court accepted Petitioner's *Alford* plea.[2]  *Id.* at p. 14.   After reviewing the pre-sentence report, hearing from the prosecution and the defense, and considering Petitioner's plea, the court sentenced Petitioner to a determinate sentence of seven and one-half years incarceration, with five years post-release supervision.  R., Ex. N, Sentencing Hr'g Tr., dated Jan. 12, 2006, at pp. 8-9.

On or about March 1, 2007, Petitioner and counsel, Charles A. Marangola, Esq., filed an appeal arguing that his *Alford* plea was insufficient because he failed to specifically waive his right to assert an intoxication defense at trial, and that the imposed sentence was harsh and excessive.  R., Ex. A, Pet'r's Appellate Br.   The New York State Appellate Division, Fourth Department, unanimously denied Petitioner's appeal and affirmed his conviction.  On July 9, 2007, Petitioner sought leave to appeal to the New York State Court of Appeals; that application was denied on August 30, 2007.  R., Exs. F & G.

On December 12, 2007, McGrail filed a *Habeas Corpus* Petition pursuant to 28 U.S.C. § 2254.  Respondent concedes that this Petition has been timely made.  Dkt. No. 27, Resp't Mem. of Law, at p. 14.  On March 28, 2008, we found that McGrail's Petition contained both exhausted and non-exhausted issues, and directed McGrail to notify this Court as to whether he was seeking a stay of the Petition to pursue available state court avenues.  Dkt. No. 5, Order.  Petitioner subsequently filed his request for a stay of the Petition, Dkt. No. 7, which this Court granted on June 11, 2008,

---

[2] A defendant entering an *Alford* plea "voluntarily, knowingly, and understandingly consent[s] to the imposition of a prison sentence even [though] he is unwilling or unable to admit his participation in the acts constituting the crime." *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).  Analogous to a plea of *nolo contendere*, an *Alford* plea occurs when "a defendant does not expressly admit his guilt, but nonetheless waives his right to a trial and authorizes the court for purposes of the case to treat him as if he were guilty."  *Id.* at 35.

Dkt. No. 8.  Because Petitioner failed to comply with the mandates detailed in the June 11, 2008 Order, specifically that he advise the Court of the status of his state court proceedings every sixty (60) days, we lifted the stay on his Petition on May 22, 2009.  Dkt. No. 17.

Meanwhile, on or about May 15, 2008, Petitioner filed a *pro se* motion to vacate the judgment of conviction, pursuant to New York Criminal Procedure Law ("C.P.L") § 440.10.  R., Ex. H, Pet'r 440 Mot.  In his motion, Petitioner claimed the following: 1) his arrest and subsequent inculpatory statement made to the police were the product of an illegal violation of his rights; 2) his plea was involuntary; and 3) his trial attorney was ineffective.  *Id.*  The Cayuga County court denied Petitioner's motion on September 12, 2008.  R., Ex. J, Order on 440 Mot.  The court found that McGrail's *Alford* plea was a voluntary and intelligent choice, and that a conviction "based on such has the same force and effect as one made after a guilty plea and full allocution."  *Id.* at p. 1.  Therefore, the court concluded, by virtue of his valid guilty plea, Petitioner waived his objections concerning his confession and any other "non-jurisdictional objections including, among others, any grand jury procedural irregularities and any claims of innocence[.]"  *Id.*  The court additionally found that Petitioner's ineffective assistance of counsel claim involved facts that are contained in the record, such that Petitioner could have raised it on direct appeal, but failed to do so.  *Id.* at p. 2 (citing C.P.L. § 440.10 (2)(c)).[3]  Petitioner did not appeal this decision to the Appellate Division.

---

[3] A motion to vacate the judgment of conviction must be denied when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal."  C.P.L. § 440.10(2)(c).

## II. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant *habeas* relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003); *see also Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001) (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the

state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

## B. Exhaustion

Prior to seeking federal *habeas* relief, a petitioner must exhaust available state remedies, or demonstrate that there is either an absence of available state remedies or that such remedies cannot adequately protect petitioner's rights.[4]  *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994).  This exhaustion requirement recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions."  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  Though both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law.  *Id.*  "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court."  *Glover v. Bennett*, 1998 WL 278272, at *1 (N.D.N.Y. May 21, 1998) (quoting *Daye v. Attorney Gen. of New York*, 696 F.2d at 192).[5]

---

[4] 28 U.S.C. § 2254(b) and (c) provide, in part, as follows:

(b)(1) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that: (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . .

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

[5] Because the AEDPA's restriction on federal *habeas* power was premised upon the duty of state courts to uphold the Constitution and faithfully apply federal laws, the AEDPA's review standards apply only to federal claims
(continued...)

In the present case, Petitioner has not properly exhausted any of his claims. His claims that his guilty plea was involuntary, defense counsel was ineffective, and that his confession was obtained in violation of his constitutional rights, were arguably presented to the state courts only in his 440 motion. Petitioner, however, never appealed the county court's decision regarding these claims. Thus, the claims Petitioner now raises in the instant *Habeas Corpus* Petition have not been presented to the highest state court from which relief could be granted, and therefore Petitioner did not exhaust his state remedies. In fact, in his Petition, McGrail readily acknowledges that the grounds he raises in support of his instant request for relief were not fully presented to the state court. *See* Pet. at ¶ 21.[6] While Petitioner had not filed his 440 motion at that point, he subsequently failed to exhaust his available state court, despite this Court's grant of a stay on the proceedings for that purpose. *See* Dkt. Nos. 5, 8, & 17.

Although a federal court may not grant a writ of *habeas corpus* on a claim that has not been exhausted, the court has the discretion to hear the merits of the asserted claims and deny such a petition. *See* 28 U.S.C. § 2254(b)(2); *see also Marziale v. Walker*, 2000 WL 33767753, at *3 (N.D.N.Y. May 4, 2000). Additionally, the Supreme Court has held that when a "petitioner failed

---

[5](...continued)
which have been actually adjudicated on the merits in the state court. *Washington v. Shriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). Accordingly, deference is not mandated under section 2254(d) if a state court decides the case on a procedural basis, rather than on the merits. *See Sellan v. Kuhlman*, 261 F.3d 303, 309-10 (2d Cir. 2001).

[6] Notwithstanding Petitioner's assessment of his failure to exhaust all grounds, Petitioner did, on his direct appeal to the Appellate Division, specifically target his *Alford* plea as one of the two sources of contention. However, he claimed on his direct appeal that his *Alford* plea was "insufficient since [he] failed to specifically waive his right to assert his intoxication at trial." R., Ex. A, Pet'r's Appellate Br. This claim differs substantially from the claim Petitioner raises in his *Habeas* Petitioner: that his *Alford* plea was "unlawfully induced or not made voluntary [sic] with understanding of the nature . . . of the charge and consequences of the plea." Pet. at ¶ 22(g). Because of the difference in character between the two claims regarding Petitioner's *Alford* plea, Petitioner did not "fairly present" his claim to the state courts through his direct appeal, as required before seeking a federal writ of *habeas corpus*. *See Jimenez v. Walker*, 458 F.3d 130, 148-49 (2d Cir. 2006); *see also Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005) ("In developing and refining the 'fairly present' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts.").

to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal courts on *habeas* review must also deem the claim procedurally defaulted.  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (quoted in *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003)).   In other words, "[a]n unexhausted claim that can no longer be exhausted is deemed procedurally defaulted."  *Andrews v. Downstate Corr. Facility*, 2009 WL 3587280, at *2 (E.D.N.Y. Oct. 27, 2009) (citing *Aparicio v. Artuz*, 269 F.3d at 90).

This Court finds that Petitioner's claims could have been raised in an appeal of the county court's decision on his 440 motion to the Appellate Division.  Petitioner cannot now file an appeal of the denial of his 440 motion because he failed to do so within thirty (30) days from the county court's decision, as outlined by C.P.L. § 460.10 (4)(a), and his motion is thus precluded from further consideration in the New York courts.  *See*, *e.g.*, *Morales v. Greiner*, 2005 WL 1009545, at *6 (E.D.N.Y. May 2, 2005).  He also cannot file a second direct appeal to the judgment of conviction, because a criminal defendant is "entitled to one (and only one) appeal."  *Aparicio v. Artuz*, 269 F.3d at 91.  Therefore, the entirety of Petitioner's claims are deemed exhausted but procedurally defaulted for purposes of his *habeas* application.  *See Spence v. Superintendent Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

When a claim in a federal *habeas* petition is procedurally barred, it cannot be heard by the federal reviewing court "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice."[7] *Coleman v. Thompson*, 501 U.S. at 750; *Ramirez v. Attorney Gen. of State of New York*, 280 F.3d 87, 94 (2d Cir. 2001); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir. 2000) (citing *Coleman*); *King v. Greiner*, 210 F. Supp. 2d 177, 182 (E.D.N.Y. 2002) (stating the court is precluded from considering unexhausted claims "unless petitioner can establish cause to excuse the default and prejudice, or actual innocence").

To establish legal cause for his or her procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with New York's procedural rules. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999). Examples of external factors include interference by officials, ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial nor on direct appeal. *Murray v. Carrier*, 477 U.S. at 488.  Here, Petitioner has not demonstrated nor stated any fact that would support a finding of legal cause for his procedural default sufficient to meet this standard. In his Petition, McGrail asserts that he did not present such claims to the state court due to "special circumstances involving [the] court of conviction and its actions[]" and that his failure to pursue such appeal falls under the "exceptions provided for in 28 U.S.C. § 2254(b)(i) and (ii)."[8] Pet. at ¶ 21.  Conversely, Petitioner also espouses that his failure to raise "any of the grounds [raised now in

---

[7] This final exception, however, is intended for the "extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Lebron v. Mann*, 40 F.3d 561, 564 (2d Cir. 1994).

[8] 28 U.S.C. § 2254 (b)(1) states the following:
"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
. . . .
(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant."

his Petition] in a prior proceeding" was due to his ignorance of the existence of such grounds and because of the ineffective assistance of counsel. *Id.* at ¶ 23. However, besides these alternative and ambiguous conclusory statements, Petitioner has offered no facts nor explanations that suggest cause such that his procedural default should be excused. While McGrail alleges ineffective assistance of counsel in his *Habeas* Petition, it is unclear to this Court how his complaints about his trial counsel's performance could be imputed to excuse his failure to exhaust the instant claims in state court appeals, especially considering that Petitioner secured alternative private counsel for his direct appeal. This Court granted McGrail a stay on his Petition explicitly for the purpose of presenting his unexhausted issues to the New York State courts. *See* Dkt. Nos. 5 & 8. His failure to do so, despite this Court's guidance, urging, and *sua sponte* grants of extensions of time, is without justification. *See* Dkt. Nos. 8, Order, dated June 11, 2008; Text Orders of September 30, 2008, December 24, 2008, & February 24, 2009; 13, Order, dated March 20, 2009; & 17, Order, dated May 22, 2009. Because Petitioner cannot establish cause for his procedural default, this Court need not decide whether he also suffered actual prejudice as to this claim because federal *habeas* relief on the basis of a procedurally defaulted claim is unavailable unless both cause and prejudice are demonstrated. *See, e.g.*, *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Pou v. Keane*, 977 F. Supp. 577, 581 (N.D.N.Y. 1997) (citing *Stepney*). Moreover, Petitioner has not established that a fundamental miscarriage of justice would occur if the Court could not adjudicate his *Habeas* Petition such that Petitioner is actually innocent of the crimes he plead guilty to.

Where there is no basis in the record for overlooking the procedural default, the barred claims are precluded from *habeas* review. Therefore, this Court recommends that the entirety of

Petitioner's claims composing his Petition be **denied** as procedurally defaulted.[9]

Furthermore, even if this Court could reach Petitioner's claim that he received ineffective assistance of counsel from his trial attorney, Samuel M. Tamburo, Esq., *see* Pet. at ¶ 22(e), that claim is likewise procedurally barred from review.  Federal *habeas* review of a state court conviction is prohibited if a state court rested its judgment on a state law ground "independent of the federal question and adequate to support the judgment."  *Coleman v. Thompson*, 501 U.S. at 729 (citations omitted) (noting that federal court resolution of the federal issue would merely be advisory where the state judgment is  supported by independent and adequate state grounds); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995).  "This rule applies whether the state law ground is substantive or procedural."  *Coleman v. Thompson*, 501 U.S. at 729 (citation omitted).  The independent and adequate state ground doctrine is jurisdictional, thus, if the state court "explicitly invokes a state procedural bar rule as a separate basis for decision[,]" the federal court is precluded from considering the merits of the federal claim in a *habeas* petition.  *Harris v. Reed*, 489 U.S. at 264 n.10.  This bar on *habeas* review applies even when a state court issues an alternative holding addressing a procedurally defaulted claim on the merits.  *See id.*; *see also Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (*per curiam*) ("[W]e are barred from reaching the merits of [petitioner's] . . . federal claims [because the] . . . state court

---

[9] While Petitioner does not make the argument, this Court is keenly aware of the Supreme Court's ruling in *Massaro v. United States*, 538 U.S. 500 (2003), that in 28 U.S.C. § 2255 *habeas* petitions there is no procedural default for failure to raise an ineffective assistance claim on direct appeal, abrogating the Second Circuit's previous holding that an ineffective assistance claim, based solely on the record made at trial and when the petitioner is represented by new counsel on appeal, must be made on direct appeal.  However, it is clear that, by its own language, *Massaro* did not extend this rule beyond § 2255 *habeas* petitions.  *See Sweet v. Bennett*, 353 F.3d 135, 140 (2d Cir. 2003) (noting that § 2254, unlike § 2255, addresses concerns of comity and federalism, and accordingly contains an exhaustion rule as well as a rule requiring deference to state courts).  McGrail filed the instant Petition pursuant to § 2254, and thus *Massaro*'s holding does not apply.

has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim.").

The Cayuga County court addressed this claim in the denial of Petitioner's 440 motion. The court found that Petitioner's "claim of ineffective assistance of counsel involve[d] sufficient facts contained in the record [such] that [Petitioner] could have raised [the issue] on direct appeal, but did not," and thus, dismissed the claim pursuant to C.P.L. § 440.10 (2)(c). *See* Order on 440 Mot. The Cayuga County court's rejection of Petitioner's claim under 440.10 (2)(c) was a clear holding based on state procedural rules independent of any federal question. A procedural bar is adequate for purposes of *habeas* review if it is based on a rule that is "'firmly established and regularly followed' by the state in question." *Garcia v. Lewis*, 188 F.3d at 77 (quoting *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). The rule that a 440 motion to vacate judgment may not be used as a device to take a belated appeal on an issue that appears on the face of the record is firmly established and regularly followed, as shown by relevant case law. *See*, *e.g.*, *People v. Jackson*, 699 N.Y.S.2d 40, 41 (N.Y. App. Div., 1st Dep't 1999), *leave to appeal denied* 729 N.E.2d 1159 (N.Y. 2000). The purpose of the rule requiring a state court to deny a motion to vacate a judgment where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record "is to prevent [Section] 440.10 from being employed as a substitute for direct appeal when [the] defendant was in a position to raise an issue on appeal . . . or could readily have raised it on appeal but failed to do so." *Sweet v. Bennett*, 353 F.3d at 139 (quoting *People v. Cooks*, 491 N.E.2d 676, 678 (N.Y. 1986)). Therefore, because the state law ground relied upon to decide this claim was independent of the federal question and adequate to support the decision of the state court, Petitioner's claim of ineffective assistance of trial is procedurally barred in this Court.

*-12-*

Therefore, because Petitioner cannot demonstrate legal cause sufficient to excuse the procedural default of his claim nor establish that a fundamental miscarriage of justice would occur if the Court could not adjudicate his federal claims, as previously examined above, this Court recommends that Petitioner's claim of ineffective assistance of trial counsel likewise be **denied** as procedurally defaulted and barred from federal review.

### C. Guilty Plea

Alternatively, even if Petitioner's claims were not barred from federal review, they are additionally without merit or waived by his guilty plea.

McGrail alleges in his Petition for *habeas* relief that his guilty plea was involuntarily and unlawfully induced. Pet. at ¶ 22(g). Specifically, Petitioner asserts that his plea was not made with an "understanding of the nature [] of the charge and consequences of the plea." *Id.*

The Cayuga County court addressed this claim on Petitioner's 440 motion. Noting that the Appellate Division, on Petitioner's direct appeal of his judgment of conviction, found Petitioner's plea "the product of a voluntary and rational choice," the county court came to the same conclusion and rejected Petitioner's claim, while also stating that "[a]n *Alford* plea is valid so long as it represents a voluntary and intelligent choice." R., Ex. J, Order on 440 Mot. In accordance with the AEDPA, this Court must decide whether that state court determination constituted an unreasonable application of clearly established federal law.

A guilty plea must represent "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). To satisfy due process, a defendant must have the ability to "consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings

against him." *Harris v. Kuhlmann*, 346 F.3d 330, 349-50 (2d Cir. 2003) (citing *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996)). Furthermore, there is no "material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in the instant case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." *North Carolina v. Alford*, 400 U.S. at 37. Thus, an *Alford* plea "is simply a guilty plea, with evidence in the record of guilt, typically accompanied by the defendant's protestation of innocence and his or her unequivocal desire to enter the plea." *Abimbola v. Ashcroft*, 378 F.3d 173, 181 (2d Cir. 2004) (quoting *United States v. Mackins*, 218 F.3d 263, 268 (3d Cir. 2000)).

In this case, there is no indication in the record that Petitioner's plea was anything less than completely voluntary, knowing, and intelligent. A review of the transcript from the plea hearing reveals that Petitioner was informed and aware of the consequences of his guilty plea. *See* R., Ex. M, Plea Hr'g Tr., dated Nov. 10, 2005. Petitioner told the court that he was satisfied with his attorney's performance, he understood the nature of the charges against him, the consequences of pleading guilty, the rights he was waiving by his plea, and that he was making his plea completely voluntarily. *Id.* at pp. 6-10. Petitioner also stated that he had no physical nor mental disabilities which would interfere with the ability to make a voluntary and intelligent plea, his plea was not made in reliance on any promises or threats, and his plea was not the result of any illegal search, seizure, compulsion, or statement given in violation of his constitutional rights. *Id.* at pp. 7-9. Lastly, when the court asked Petitioner to recount the incident and his participation in the offense, Petitioner told the court that he did not remember anything about the day in question because he "was drinking." *Id.* at p. 10. The court explained to Petitioner that voluntary intoxication is "not

*-14-*

a defense to any crime in this State.  However, where a crime requires an intent, a jury may consider the question of intoxication in determining whether the person had the ability to form the intent to commit the crime in question." *Id.*  After Petitioner indicated he still wished to plead guilty, the trial court initiated an *Alford* plea proceeding, wherein the court "may still accept a plea under certain conditions, those conditions being that the Defendant [after] being apprised of what is alleged does not basically dispute what is alleged, although he has no recollection of it . . . but that the evidence that has been presented is so compelling that the person is . . . willing to enter a plea." *Id.* at p. 11. After continuing the *Alford* plea colloquy with Petitioner and his attorney, including asking the prosecution what they were prepared to prove if the matter went to trial, the court was satisfied that Petitioner was pleading guilty voluntarily and intelligently.  *Id.* at pp. 11-14.

Thus, Petitioner's unsupported allegation that his guilty plea was not voluntary is not sufficient to warrant *habeas* relief.  A criminal defendant's self-inculpatory "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them."  *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999) (citations omitted).  Petitioner has not provided evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own accord, and that he understood the nature of the charges agains him and the consequences of his plea.  Thus, after a thorough review of the record, we cannot conclude that McGrail's guilty plea was made involuntarily and in violation of his rights to due process as a result.  Because, for the above reasons, the New York State courts' determination of the claim was not an unreasonable application of established federal law, we recommend Petitioner's claim be **denied**.

As discussed above, McGrail claims in his *Habeas* Petition that he received ineffective assistance of counsel.  *See* Pet. at ¶ 22(e).  He does not explicitly spell out what his counsel purportedly did, or failed to do, that resulted in such deficient performance, or how it relates to his guilty plea, but rather attaches to his Petition his Memorandum of Law in Support of his 440 Motion. *See id.* at Ex. A, pp. 28-35.  Even if this claim was not unexhausted or procedurally barred by a state court decision based on an independent and adequate state ground, Petitioner's claim that he received ineffective assistance of counsel is without merit.

To establish ineffective assistance of counsel in violation of the Sixth Amendment, a *habeas* petitioner must show that: 1) his attorney's representation was deficient such that it fell below an objective standard of reasonableness measured by the prevailing professional norms; and 2) this deficient performance prejudiced his defense such that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different. *Bell v. Cone*, 535 U.S. 685, 695 (2002) (citing *Strickland v. Washington*, 466 U.S. 668, 688 & 694 (1984)); *see also Aeid v. Bennett*, 296 F.3d 58, 62-63 (2d Cir. 2002); *Brown v. Artuz*, 124 F.3d 73, 79-80 (2d Cir. 1997); *Rattray v. Brown*, 261 F. Supp. 2d 149, 157 (E.D.N.Y. 2003).[10]  In determining the reasonableness of counsel's representation, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [legal] strategy.'"  *Strickland v. Washington*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

After reviewing the record before us, this Court concludes that McGrail's defense counsel's

---

[10] In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in *Strickland* qualifies as 'clearly established Federal law[.]'"  529 U.S. 362, 391 (2000); *see also Sellan v. Kuhlman*, 261 F.3d 303, 309 (2d Cir. 2001).

representation did not amount to ineffective assistance of counsel.  It is evident that Petitioner's counsel negotiated a favorable plea agreement for Petitioner, who was charged with a Class B felony carrying a potential prison term of twenty-five years.  *See* N.Y. PENAL LAW § 70.02(3)(a); *see also* R., Ex. M, Plea Hr'g Tr. at p. 8.  Counsel effectively secured a plea offer resulting in a prison sentence of seven and one-half years.  *See* R., Ex. N, Sentencing Hr'g Tr., dated Jan. 12, 2006, at p. 8.  Moreover, in the plea hearing before the county court, Petitioner indicated that he was "satisfied with the services [his attorney] rendered [on his] behalf."  Plea Hr'g Tr. at p. 6.  In his Petition, which incorporates his Memorandum in support of his 440 Motion, McGrail claims that his counsel was ineffective because he "was not provided an opportunity to be present at his Grand Jury."  Pet., Ex. A, Pet'r's Mem. of Law in Support of 440 Mot., at p. 13.  Even assuming this complaint is true, "New York courts have consistently held that counsel's failure to ensure that the defendant testifies before the grand jury does not amount to ineffective assistance of counsel." *Davis v. Mantello*, 42 F. App'x 488, 491 n.1 (2d Cir. 2002).  Petitioner also contends that his counsel was ineffective for "ma[king] no oral challenges or objections relating to the [*Alford*] plea."  Pet'r's Mem. of Law in Support of 440 Mot. at p. 15.  However, it is unclear on what basis Petitioner would have had his attorney object.  As examined above, his plea was favorable, and it was entered knowingly, voluntarily, and intelligently.  Additionally, notwithstanding Petitioner's individual complaints of attorney ineffectiveness, a review of the prior state court proceedings *in toto* indicates that Petitioner's counsel performed laudably.  Attorney Tamburo appropriately conducted an investigation into the basis behind the charges and the subsequent *Alford* plea prior to the plea hearing.  *See* Plea Hr'g Tr. at pp. 11-13.  He also directed the court during sentencing to consider that Petitioner had no prior criminal history, Petitioner admitted he had a substance abuse problem,

as indicated in the pre-sentencing report, he regreted what happened, and that the victim appeared to be doing well under the circumstances. *See* Sentencing Hr'g Tr. at pp. 4-7.

Therefore, we cannot conclude that McGrail's attorney's representation was objectively unreasonable. As such, we need not discuss *Strickland*'s second inquiry of whether the deficient performance actually prejudiced the Petitioner. Because, for the above reasons, Petitioner's claim that he received ineffective assistance of trial counsel is without merit, we recommend Petitioner's claim be **denied**.

As to Petitioner's remaining claims regarding his confession, it is well-settled that a defendant's properly counseled and entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "A guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.*; *accord United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.") (internal quotations omitted).

In this instant case, Petitioner claims that his statement made to the police in which he

admitted he made oral contact with J.M.'s vagina[11] was the product of an unlawful arrest, constituted an unconstitutional search and seizure, was in violation of his rights against self-incrimination, and was the product of coercion. Pet. at ¶¶ 22 (A)-(D). Petitioner, in making his guilty plea to the court, clearly waived any possible claims regarding his confession made to the police and his allegation that it was the product of an unlawful arrest and seizure, in violation of his rights against self-incrimination, and was the product of coercion. During the plea colloquy, the court explicitly asked Petitioner and his counsel if they had any underlying constitutional challenges, to which they answered in the negative.[12] As discussed above, there is nothing in the record to indicate that Petitioner's decision to plead guilty was anything but knowing, voluntarily, and intelligent, and Petitioner did not suffer from ineffective assistance of counsel. By pleading guilty, Petitioner chose

---

[11] The statement Petitioner made to the Cayuga County Sheriff's office, in short, was that he performed oral sex on J.M., but only because "[s]he came on to [him]." Petitioner stated that:

> I tried to pull her off the bunk, she layed [sic] back and her pants and underwear came down. She spread her legs and her vagina was almost in my face. I took this to mean that she wanted me to go down on her. When I say "go down" I mean that she wanted me to tickle her little thing with my tongue. As I pulled [J.M.] off the bed, my mouth came in contact with the top of her vagina. It was a freak accident. I knew she was coming on to me. I feel bad that it went as far as it did with [J.M.] and me. It should have never happened. If you want me to go to counseling I will.

R., Ex. B, Pet'r Statement to Police, dated July 8, 2005.

[12]      Court: "Does your client contend this plea has been brought about by any illegal search or seizure, Mr. Tamburo?"
Tamburo: "No, Judge."
Court: "Does he contend this plea has been brought about by any statement given in violation of his constitutional or statutory rights?"
Tamburo: "Well, we did make that claim, Judge, but he would have to waive that to – "
Court: "You're withdrawing that claim?"
Tamburo: "Yeah. Would have to for him to proceed."
Court: "Thank you. Do you contend this plea has been brought about by any identification proceeding that may have been tainted in any fashion?"
Tamburo: "No, Judge."
. . . .
Court: "Okay. Has anyone else made any promises to you other than what has been said in this courtroom?"
Petitioner: No.
Court: "Now has anyone threatened you or coerced you to get you to enter this plea?"
Petitioner: "No, sir."

Plea Hr'g Tr. at pp. 7-9.

to forgo his challenges regarding his post-arrest statement.  Accordingly, we find Petitioner's complaints, as they relate to his statement given to the Cayuga County Sheriff's office, are waived by his guilty plea and should be **denied**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* (Dkt. No. 1) be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000), *cert. denied* 531 U.S. 873 (2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a).

Date:   November 14, 2011
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge